**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SHEILA HELMERT, WILMA BROWN, and                                    PLAINTIFFS
LORI WEST, on behalf of themselves and others
similarly situated

v.                                          No. 4:08CV00342 JLH

BUTTERBALL, LLC                                                      DEFENDANT

### OPINION AND ORDER

The plaintiffs bring this action on behalf of themselves and others similarly situated against

their former employer, Butterball, LLC, for alleged violations of the Fair Labor Standards Act,

29 U.S.C. § 201 *et seq.*, the Minimum Wage Act of Arkansas, ARK. CODE ANN. § 11-4-201 *et seq.*,

and Arkansas common law.  Before the Court are three separate motions: the plaintiffs' motion for

collective action under the FLSA and class certification pursuant to Rule 23 for claims under the

MWA, the defendant's motion for summary judgment, and the defendant's motion to amend an

affirmative defense.  For the following reasons, the Court grants the plaintiffs' motion for collective

action, denies the plaintiffs' motion for class certification, grants in part and denies in part the

defendant's motion for summary judgment, and grants the defendant's request for leave to amend

the pleadings.

### I.

Butterball processes turkey products.  It has plants in Huntsville, Ozark, and Jonesboro,

Arkansas, as well as in other states.  The three named plaintiffs are former employees of Butterball

who worked at the Ozark facility.  Sheila Helmert worked in the evisceration department at the

Ozark facility from approximately June 2006 to May 2007.  Wilma Brown worked at the Ozark

facility from April 2001 to November 2007.  From April 2003 to November 2007, she worked in the bagging department as a bagger, and toward the end of her employment, she worked as a team leader.  Lori West worked in the evisceration department at the Ozark facility from approximately January 2004 to September 2007.

Butterball employs approximately 300 hourly employees at its Ozark facility and 700 hourly employees at its Huntsville facility.  At the Huntsville facility, processing employees are assigned to one of seven departments: evisceration, packaging, tray pack, deboning, smoke and bake, boneless rolled turkey, or boxing.  At the Ozark facility, employees are assigned to one of three departments: evisceration, packaging, or boxing.

Every production employee at the Ozark and Huntsville facilities is required to wear some form of protective gear, which may include but is not limited to smocks, bump caps, hard hats, ear plugs, hair nets, coveralls, rubber boots, rubber gloves, steel-toed boots, liners, latex gloves, and safety glasses.  Butterball requires its employees to don and doff much of their protective gear onsite, either exchanging it for clean gear each day or storing it in a locker on the premises.  Each of the named plaintiffs wore some combination of protective gear and donned and doffed that gear onsite.

Butterball pays most of its production employees in the Huntsville and Ozark facilities on a system known as "gang time," "line time," or "scheduled time," in which work time is measured either from the time that the first turkey passes a particular point on the production line or a pre-scheduled start time until the time the last turkey passes the same point.  Some employees, including non-production line employees, trainers, and team leaders, are paid "punch to punch."  Under that system, employees are paid based on when they punch in with their time cards at the beginning of a shift and when they punch out at the end of the shift.  Wilma Brown says that she was paid punch

2

to punch while she worked for Butterball as a team leader.  Plaintiffs Helmert and West were paid according to the gang time system.

Butterball also pays production employees for a fixed amount of time known as "plug time" to compensate them for time spent donning, doffing, and sanitizing personal protective equipment, as well as walking to and from their work stations.  Since January 2008, Butterball has paid six minutes of plug time per day to all production employees paid on the gang time system at the Huntsville facility.  Butterball also paid six minutes of plug time retroactively to January 1, 2007, to all current production employees at the Huntsville facility.  Since February 2008, Butterball has paid six minutes of plug time to all production employees paid on gang time at the Ozark facility.  Butterball also paid six minutes of plug time retroactively to January 1, 2007, to all current production employees at the Ozark facility.  Prior to February 2008, production employees paid on gang time at the Ozark facility received two minutes of plug time.  Throughout the relevant time period, Butterball paid its production employees at its Jonesboro facility for ten minutes of plug time per day.  The plaintiffs allege that they have not been paid for all of their donning and doffing time (both straight time and overtime) in violation of the Fair Labor Standards Act ("FLSA"), the Minimum Wage Act of Arkansas ("MWA"), and Arkansas contract law.

After the parties' mediation efforts failed, this Court issued a scheduling order that divided discovery into two phases.  Phase 1 discovery related to "certification issues only" and was to be completed no later than June 30, 2009,[1] at which time the Court would rule on the plaintiffs' motion

---

[1] This deadline was extended to July 31, 2009, and the deadline for filing responses to the plaintiffs' motion for collective action and class certification and defendant's motion for summary judgment was extended to August 21, 2009.  Document #70.

for collective action and class certification, as well as the defendant's summary judgment motion referenced in the parties' April 13, 2009, Joint Status Report.

On July 31, 2009, the plaintiffs filed a motion for collective action and class certification. The plaintiffs moved to certify their first cause of action as an FLSA collective action pursuant to § 216(b) of the FLSA, and they moved to certify their second, third, and fourth causes of action as class actions pursuant to Rule 23 of the Federal Rules of Civil Procedure. On that same day, Butterball filed a motion for summary judgment with respect to each of the plaintiffs' five causes of action alleged in their amended complaint. Then, on August 28, 2009, Butterball filed a motion for leave to amend one of the thirty-three affirmative defenses it raised in its answer to the plaintiffs' complaint. The parties have filed the appropriate responses and replies to these motions, and the Court will analyze each motion in turn.[2]

## II.

The plaintiffs seek a collective action certification under the FLSA and, for the MWA claims, a class certification pursuant to Federal Rule of Civil Procedure 23. On behalf of themselves and the proposed FLSA class, the plaintiffs allege a violation of the FLSA. On behalf of themselves and the proposed Rule 23 class, the plaintiffs assert three causes of action under the MWA, and they seek both legal and equitable relief. The plaintiffs' amended complaint also includes a breach of contract claim for which class certification was not sought.

---

[2] Rule 23(c)(1) provides that "[a]t an early practicable time after a person sues . . . as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1). Thus, this Court will determine the pending motion to certify a class before we consider the merits of the pending motion for summary judgment. *See Wilson v. Am. Cablevision of Kansas City, Inc.*, 130 F.R.D. 404, 405-06 (W.D. Mo. 1990) (ruling on the pending motion to certify a class before considering the merits of the pending motions for summary judgment).

A.      **FLSA CLASS**

The plaintiffs' proposed FLSA class includes:

> All persons who are or were employed by Butterball, LLC ("Butterball"), as non-exempt, hourly paid, production employees at Butterball's turkey processing plants located in Huntsville and Ozark, Arkansas, who have been employed by Butterball any time during the three-years prior to the date of the Court's ruling granting certification.

The FLSA authorizes "similarly situated" employees to proceed collectively to recover damages for violations of the FLSA's overtime and record-keeping provisions.  29 U.S.C. § 216(b) (2006).  "These collective actions are intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights." *In re Pilgrim's Pride FLSA Litig.*, No. 1:07CV1832, 2008 WL 4877239, at *2 (W.D. Ark. Mar. 13, 2008) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)).  The FLSA does not expressly define "similarly situated."  Although the Eighth Circuit has not addressed the issue, this Court and others within the Eighth Circuit have applied the two-step approach set out in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).  *See In re Pilgrim's Pride*, 2008 WL 4877239, at *2 (citing to federal courts that follow the two-step approach and adopting it); *Davis v. NovaStar Mortgage, Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005) (applying the two-step approach); *Kalish v. High Tech Inst., Inc.*, No. Civ. 04-1440, 2005 WL 1073645, at *1 (D. Minn. Apr. 22, 2005) (applying the two-step approach); *McQuay v. Am. Int'l Group*, No. 4:01CV00661, 2002 WL 31475212, at *2 (E.D. Ark. Oct. 25, 2002) (noting that "a majority of courts have adopted a two-step process").  "This approach provides for a two-step determination as to whether class certification is proper."  *Davis*, 408 F. Supp. 2d at 815.  Generally, the plaintiffs move for conditional certification at an early stage in the litigation, and a

5

class is conditionally certified for notice purposes. *Id.* Then, the defendant is allowed the opportunity to move for de-certification at the close of discovery. *Id.*

1. *Notice Stage*

In the first stage, or "notice stage," courts apply a lenient standard to determine whether persons similarly situated to the named plaintiffs exist and should receive notice. *Id.* Plaintiffs bear the burden of proof at this stage, and they "can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007) (quoting *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). Plaintiffs need not show that members of the conditionally certified class are identically situated. *In re Pilgrim's Pride*, 2008 WL 4877239, at *3 (citing *Kautsch*, 504 F. Supp. 2d at 689).

In support of their motion for certification, the plaintiffs offer evidence that all members of the proposed class don and doff protective gear. They also allege facts sufficient to prove that each member was subjected to a common policy or plan: Butterball's policy against compensating employees for the full amount of time each employee spent donning, doffing, and sanitizing protective gear and walking to and from the production areas throughout each continuous workday. Such a policy has been found sufficient for conditional certification in a number of courts, even when the plaintiffs' individual cases against the defendants varied somewhat. *See, e.g.*, *Busler v. Enersys Energy Prods., Inc.*, No. 09-00159-CV-W-FJG, 2009 WL 2998970, at *3 (W.D. Mo. Sept. 16, 2009) (acknowledging certain distinctions between the compensation policies at each plant but finding the plaintiffs similarly situated for conditional certification); *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 440 (W.D. Wis. 2008) (granting conditional certification because "the

ultimate question in this case is straightforward: does the law require defendant to pay its employees for donning and doffing safety equipment and for walking to and from their work stations?"); *Frank v. Gold'n Plump Poultry, Inc.*, No. 04-CV-1018, 2007 WL 2780504, at **3-4 (D. Minn. Sept. 24, 2007) (finding Gold'n Plump's decision not to require that its employees be paid for donning and doffing constituted a "policy" that entitled the plaintiffs to conditional certification, even though the "payment practices of supervisors var[ied] in some respects").

Butterball points out that the proposed class includes employees who are paid according to a punch-to-punch system as well as those who are paid according to a gang time system. Butterball contends that as a result the putative class members are not similarly situated. In their reply, the plaintiffs concede that a small number of potential plaintiffs are paid punch to punch. However, they continue to maintain that the punch-to-punch timekeeping system does not necessarily compensate employees for all of their donning-and-doffing-related activities.

Butterball also highlights other differences among the potential class members–namely, that they worked at different facilities, wore different protective gear, and were subject to different plug time policies. Based on these differences, Butterball alleges that the named plaintiffs are not similarly situated to the proposed class members. Butterball also contends that some of the class members–particularly those who were paid six minutes of plug time–may have been fully compensated for time spent donning and doffing protective gear.

Simply identifying differences between the parties is not enough to defeat a motion for class certification at this notice stage.[3] *Spoerle*, 253 F.R.D. at 439-40. Even if these differences may

---

[3] The plaintiffs point out and the Court recognizes that

it is somewhat ironic that defendant is now arguing that it is impossible to determine

affect the plaintiffs' ability to prove liability, the Court does not reach the merits of the parties' claims and defenses at the certification stage. *In re Pilgrim's Pride*, 2008 WL 4877239, at *3.  So long as the plaintiffs provide evidence that the proposed class members were victims of the same policy or plan, conditional certification is appropriate. *Id.*  In this case, the members of the proposed class allegedly were subject to a common policy against compensating employees for the full amount of time each employee spent donning, doffing, and sanitizing protective gear and walking to and from the production areas throughout each continuous workday; thus, the named plaintiffs are similarly situated to the proposed class members for the purpose of conditional certification.

Butterball also argues that the plaintiffs' proposed FLSA class should not be certified because the plaintiffs fail to offer evidence that any potential class members desire to opt in to the litigation.  In *Dybach v. Florida Department of Corrections*, the Eleventh Circuit determined that "the district court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' " before conditionally certifying an FLSA class.  942 F.2d 1562, 1567 (11th Cir. 1991).  Since *Dybach*, three district court cases within the Eighth Circuit have considered at this stage whether other class members desire to opt in to the litigation.  *See Musticchi v. Little Rock*, No. 4:08CV00419 SWW, at **6-7 (E.D. Ark. Feb. 2, 2009) (requiring evidence "that other similarly situated individuals desire to opt in to the litigation because others' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice");

---

liability on a class wide basis.  After all, it was defendant that moved for summary judgment . . . arguing that it was possible to resolve the entire case as a matter of law without regard to the differences between the plaintiffs.  Defendant makes no effort to reconcile the apparent inconsistency of its views at different stages of the case.

*Spoerle*, 253 F.R.D. at 439.

*Knutson v. Blue Cross & Blue Shield of Minn.*, Civ. No. 08-584 (RHK/JSM), 2008 WL 4371382, at *3 (D. Minn. Sept. 23, 2008) (requiring the plaintiff to proffer evidence that other similarly situated individuals desire to opt in to the case); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007) ("[A] district court 'should satisfy itself that there are other employees . . . who desire to opt-in' before conditionally certifying a collective action.")(quoting *Dybach*, 942 F.2d at 1567).

On the other hand, in several cases, including one from within the Eighth Circuit, district courts have refused to require evidence that potential class members desire to opt in to the litigation in the first stage of certification. *See, e.g.*, *Mancia v. Mayflower Textile Servs. Co.*, No. 08-273, 2008 WL 4735344, at *3 n.5 (D. Md. Oct. 14, 2008) (criticizing *Dybach* and *Parker*); *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) (rejecting such a requirement since it did not comport with broad remedial goals of FLSA and effectively "puts the cart before the horse"); *Kautsch*, 504 F. Supp. 2d at 690 n.1 (acknowledging *Dybach* but declining to require plaintiffs to show that other potential plaintiffs wish to opt in to the class); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (stating that such a requirement "appears to conflict with the United States Supreme Court's position that the Act should be liberally applied") (internal quotation omitted). According to one district court,

> Defendants' proposed rule does not make sense. It would essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs. That aside, the logic behind defendants' proposed procedure–requiring [the plaintiff] to show that others want to join in order to send them notice asking if they want to join–escapes the Court. Requiring a plaintiff to make an advance showing that others want to join would undermine the "broad remedial goal" of the FLSA.

*Heckler*, 502 F. Supp. 2d at 780.  Furthermore, requiring named plaintiffs to contact potential class members to survey their interest in opting in to the litigation before sending the class members official notice of the litigation would unnecessarily give rise to potential ethical issues.  *See* ARK. RULES OF PROF'L CONDUCT R. 7.3 (2005).

Even if the FLSA requires a court to satisfy itself that other employees will opt in to the litigation, the long history of collective action litigation concerning the pay practices of meat processing plants belies the notion that no one in the plaintiffs' proposed FLSA class would wish to opt in to this litigation.  *See Martinez-Hernandez v. Butterball, LLC*, No. 5:07CV00174, at **5-6 (E.D.N.C. Nov. 14, 2008) (granting the plaintiff's motion for conditional certification in a similar case against Butterball involving 6,000 production employees); *see, e.g.*, *Tyson Foods, Inc. v. Garcia*, 534 F.3d 1320 (10th Cir. 2008) (involving an FLSA class of meat processing plant employees); *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361 (3d Cir. 2007) (same); *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) (same); *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499 (D. Md. 2009) (same); *Anderson v. Perdue Farms, Inc.*, 604 F. Supp. 2d 1339 (M.D. Ala. 2009) (same); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790 (M.D. Tenn. 2008) (same); *Hoyt v. Ellsworth Coop. Creamery*, 579 F. Supp. 2d 1132 (W.D. Wis. 2008) (same).  The Court is satisfied that, of the 300 hourly employees at Butterball's Ozark facility and 700 hourly employees at Butterball's Huntsville facility, some employees would wish to opt in to this litigation if given the opportunity.  *See Dybach*, 942 F.2d at 1567.

2.    *Opt-In Stage*

In the second stage, or "opt-in stage," of the analysis, courts determine whether the class that has been conditionally certified should be maintained throughout the trial.  "Plaintiffs seeking to

maintain an opt-in class action bear the burden to show that they are similarly situated with respect to their job requirements and pay provisions." *Kautsch v. Premier Commc'ns*, No. 06CV04035, 2008 WL 294271, at *1 (W.D. Mo. Jan. 31, 2008) (citing *Grayson v. K Mart Corp.*, 79 F. 3d 1086, 1096 (11th Cir. 1996)).  Courts consider three factors at this second stage: (1) the employment and factual settings of the plaintiffs; (2) the various defenses available to the defendants; and (3) considerations of fairness, procedure, and manageability. *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 892-93 (N.D. Iowa 2008); *Kautsch*, 2008 WL 294271, at *2; *Smith v. Heartland Auto. Servs., Inc.*, 404 F. Supp. 2d 1144, 1150 (D. Minn. 2005).  This second stage analysis usually occurs after conditional certification and upon the defendant's motion to decertify, or, alternatively, after discovery is largely complete. *Bouaphakeo*, 564 F. Supp. 2d at 892.

Butterball argues that the Court should proceed to this second stage because the parties have completed all certification discovery.[4]  To support its argument, Butterball cites to a number of cases in which courts address the substantive questions posed in the second stage of the certification analysis when certification discovery already has been completed at the time conditional certification is granted. *Bouaphakeo*, 564 F. Supp. 2d at 895; *see, e.g.*, *Bunyan v. Spectrum Brands, Inc.*, No. 07CV00089, 2008 WL 2959932, at **3-4 (S.D. Ill. Jul. 31, 2008) (proceeding under an intermediate analysis where parties had exchanged interrogatories, conducted depositions, and exchanged a large number of documents); *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709, at **4-5 (E.D. La. Jul. 2, 2004) ("Because . . . substantial discovery has already been undertaken such that the Court can make an educated decision as to whether certifying this matter

---

[4] In its motion to amend the pleadings, Butterball concedes that no merits discovery has taken place, pursuant to this Court's order that merits discovery should not begin until the parties have conducted their Rule 26(f) conference.  Document #95.

as a collective action would survive the decertification process, the ends of judicial economy []

require the Court to make that enquiry at this stage."); *Pfohl v. Farmers Ins. Group*, No. CV03-3080

DT (RCX), 2004 WL 554834, at *3 (C.D. Cal. Mar. 1, 2004) (proceeding to the second step of the

two-step analysis when discovery has been undertaken relating to the issues of certification). These

courts contend that merging the two stages of certification where substantial discovery has taken

place serves the interests of judicial economy. *Basco*, 2004 WL 1497709, at **4-5. They also

recognize that, substantively, they cannot overlook the substantial discovery that has been conducted

and the "valuable information before the court that is relevant to [] certification." *Bouaphakeo*, 564

F. Supp. 2d at 895.

On the other hand, some courts hold that a substantive second-stage analysis is not

appropriate until *all* discovery–including merits discovery–is substantially complete. *See, e.g.*,

*Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 686 (D. Kan. 2009) (finding a second stage analysis

inappropriate where discovery had not concluded and no scheduling order concerning merits

discovery had been entered or trial date set); *Lopez v. Tyson Foods*, No. 8:06CV459, 2008 WL

3485289, at *9 (D. Neb. Aug. 7, 2008) (rejecting defendant's argument that plaintiffs should be held

to a higher standard for certification in light of significant discovery conducted; discovery was not

merits-based or intended to be completed at this stage and the case was not yet set for trial); *Fast v.

Applebee's Intern., Inc.*, 243 F.R.D. 360, 363 (W.D. Mo. 2007) (evaluating the plaintiffs' motion

under the notice stage criteria because neither party contends that discovery is substantially

complete); *Kautsch*, 504 F. Supp. 2d at 689 (evaluating the plaintiffs' certification motion under the

notice stage criteria even though the parties had conducted discovery for seven months and produced

over 4,000 pages of documents); *Aguayo v. Oldenkamp Trucking*, No. CV F 04-6279, 2005 WL

2436477, at *3 (E.D. Cal. Oct. 3, 2005) (determining that the case was at the notice stage because a trial date had not been set, discovery was limited to the issue of class certification, and discovery on the merits was not complete).   These courts insist on two distinct and separate stages of certification for two reasons: First, when the parties have engaged in only limited discovery, it is premature to conclude that the evidence is representative of what the plaintiffs would present given further discovery.  *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164, 1166-67 (D. Kan. 2006).  Second, the notice stage analysis places the burden of proof on the plaintiff, but the opt-in stage analysis, which typically follows a motion to decertify, places the burden of proof on the defendant; merging the two stages of analysis would inevitably skew the burden of proof.  *Hammond v. Lowe's Home Ctrs., Inc.*, No. Civ. A. 02-2509-CM, 2005 WL 2122642, at *3 (D. Kan. Sept. 1, 2005).

The Court is persuaded by this second line of reasoning.  Even at the notice stage of the analysis, a court may consider the pleadings and any affidavits that have been submitted to support or discredit the motion for certification.  *See Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007) (determining that the court must make a decision at the notice stage based on the pleadings and affidavits that have been submitted) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995)).  And although the interests of expediency may be better served by proceeding with the opt-in stage analysis, the parties agree that they have not substantially completed discovery.  A trial date has not been set nor has merits discovery even commenced.  Discovery up to this point has been limited to the issue of class certification.  Document #75; *see Aguayo*, 2005 WL 2436477, at *3 (applying a notice stage analysis on similar facts).  As a result, this

Court declines to proceed to the second phase of the certification analysis and grants the plaintiffs'

motion for conditional class certification.

**B.      RULE 23 ARKANSAS CLASS**

The plaintiffs also seek certification of the following Rule 23 class for claims arising under

the Minimum Wage Act of Arkansas:

> All persons who are or were employed by Butterball, LLC ("Butterball"), as non-exempt, hourly paid, production employees at Butterball's turkey processing plants located in Huntsville and Ozark, Arkansas, who have been employed by Butterball at any time since October 1, 2006 to the present.[5]

Federal Rule of Civil Procedure 23 states the requirements that must be met to obtain class

certification.   First, the plaintiffs must prove four prerequisites to certification: numerosity,

commonality, typicality, and representativeness.  FED. R. CIV. P. 23(a); *Paxton v. Union Nat'l Bank*,

688 F.2d 552, 559 (8th Cir. 1982).  If those prerequisites are met, "plaintiffs have the burden of

demonstrating that, as required by Rule 23(b)(3), questions of law or fact common to the members

of the class predominate over any questions affecting only individual members."  *Blades v.

Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005) (internal citations omitted).  In other words, issues

common to the class must predominate over individual issues.  *Monreal v. Potter*, 367 F.3d 1224,

1237 (10th Cir. 2004).

**1.      *Rule 23(a)***

The plaintiffs allege—and Butterball concedes—that the class is so numerous that joinder

of all members is impracticable.  *See* FED. R. CIV. P. 23(a)(1).  As of December 2008, Butterball

---

[5] At oral argument, plaintiffs' counsel requested that the class definition be amended to include all persons employed at the Ozark and Huntsville facilities for the maximum time allowable under the statute of limitations.

employed approximately 700 employees at its Huntsville plant and 300 employees at its Ozark plant. Although these numbers do not account for all employees at the two facilities since October 1, 2006, they provide sufficient evidence of numerosity to satisfy the plaintiffs' burden.  *See Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir. 1983) ("[N]o arbitrary rules regarding the necessary size of classes have been established.").

Likewise, the plaintiffs have demonstrated that there is a common question of law shared among the members of the proposed class: whether employees must be compensated for donning-and-doffing-related activities.  *See* FED. R. CIV. P. 23(a)(2).  Commonality may be satisfied when "the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.  Thus, factual differences are not fatal to maintenance of the class action if common questions of law exist."  *Robinson v. Sears, Roebuck & Co.*, 111 F. Supp. 2d 1101, 1120 (E.D. Ark. 2000) (internal citations omitted).

The plaintiffs have not, however, satisfied their burden of proving that the claims or defenses of the representative parties are typical of the claims or defenses of the class or that the named plaintiffs can fairly and adequately represent the interests of the class members.  *See* FED. R. CIV. P. 23(a)(3) and (4).  The Eighth Circuit has explained:

> A district court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." *General Tel. Co. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The adequacy and typicality requirements "serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2251 n. 20, 138 L.Ed.2d 689 (1997) (quotation omitted). These issues are committed to the trial court's discretion. "A district court has broad discretion in determining whether to certify a class, and its determination will not be overturned absent a showing that it abused its discretion." *Gilbert v. City of Little*

15

*Rock*, 722 F.2d 1390, 1399 (8th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984).

*In Re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999).

The plaintiffs here seek prospective relief requiring Butterball to take future actions *vis-a-vis* its employees at the Ozark and Huntsville facilities.[6]  Although prospective relief is available under the MWA, none of the putative class representatives is employed by Butterball and none has provided evidence that she may be employed by Butterball in the future.  Hence, none of the named plaintiffs has a personal stake in obtaining an injunction or declaratory judgement.  The named plaintiffs therefore lack standing to seek prospective relief.  *See Walsh v. Nev. Dept. of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006); *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005) (holding that a plaintiff lacks standing to seek prospective relief unless she can "show that she faces a real and immediate threat that she would again suffer similar injury in the future").

A person who lacks standing to seek prospective relief does not have claims typical of a class seeking declaratory or injunctive relief and cannot adequately represent the class.  *In Re Milk Prods.*, 195 F.3d at 437; *Hall v. Lhaco*, 140 F.3d 1190, 1196-97 (8th Cir. 1998) (noting that a person "is not a proper class representative of the class where he himself lacks standing to pursue the claim"); *see also Mixon v. Gray Drug Stores, Inc.*, 81 F.R.D. 413, 416 (N.D. Ohio 1978) (holding that estate of former employee could not represent a class of employees in a discrimination case because the estate could not benefit from injunctive relief); *Rivera v. Dick McFeely Pontiac, Inc.*, 75 F.R.D. 1, 3 (N.D.

---

[6]Specifically, the plaintiffs seek "[a] declaratory judgment that the practices complained of herein are unlawful under Arkansas law," as well as "[a]ppropriate equitable and injunctive relief to remedy Defendant's violations of Arkansas law, including but not necessarily limited to an order enjoining Defendant from continuing its unlawful practices."  Document #1.

Ill. 1977) (holding that, although the named plaintiff's interests did not conflict with those of the class, he was an inadequate representative because he lacked standing to seek injunctive relief).

The plaintiffs point out that, in the employment discrimination context, a number of courts, including the Eighth Circuit, have held that former employees can be adequate representatives of a class of former and current employees seeking prospective relief. *Reed v. Arlington Hotel Co.*, 476 F.2d 721, 722-23 (8th Cir. 1973) (holding that a discharged employee could serve as class representative of black employees in a claim for injunctive relief); s*ee, e.g.*, *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1030-31 (6th Cir. 1977) (finding that former employees could bring their Title VII claim on behalf of a class of past and present employees); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975) (same). Assuming that *Reed v. Arlington Hotel Co.* remains good law with respect to cases of discrimination in employment based on race or sex, the Court does not believe that the Eighth Circuit would extend *Reed* to other contexts. In *Reed*, the plaintiff had been the victim of racial discrimination while employed by the defendant and had been discharged because of his objection to the defendant's discriminatory practices. *Reed*, 476 F.2d at 722. The Eighth Circuit reasoned that was a claim of race discrimination is inherently a class claim; thus, a single charge of employment discrimination may serve as reasonable grounds to launch a full-scale investigation into alleged unlawful motivation in employment practices.[7] *Id.* at 723. The Eighth Circuit also noted that an employer should not be able to defeat a class action by discharging a potential class representative. *Id.* Neither of those elements of reasoning is present here. A claim

---

[7] The continuing validity of that portion of the *Reed* opinion has been questioned. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, 102 S. Ct. 2364, 2370-71, 72 L. Ed. 2d 740 (1982); *Griffin v. Dugger*, 823 F.2d 1476, 1484-85 (11th Cir. 1987).

for overtime wages is not in its very nature a class claim, nor is there any suggestion that the plaintiffs were discharged unlawfully or to prevent them from representing a class.

The general rule is that a representative of a class seeking injunctive relief must have standing to seek that relief. *In Re Milk Prods.*, 195 F.3d at 437. *Reed* presents an exception to that general rule. Here, the general rule applies, not the exception. Consequently, the claims of the named plaintiffs are not typical of the claims of the class they seek to represent, and the named plaintiffs are not adequate class representatives.[8]

## III.

Butterball has moved for summary judgment with regard to each of the plaintiffs' five causes of action. A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d

---

[8] Because the plaintiffs do not have standing and cannot be adequate representatives of the class they seek to represent, the Court need not consider whether the requirements of Rule 23(b) are met nor whether it would be appropriate to exercise supplemental jurisdiction over a Rule 23 class seeking relief parallel to the FLSA relief sought here. *Cf. In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009) (declining to exercise supplemental jurisdiction over a class action claim for overtime wages due to the incompatibility of an FLSA collective action with a Rule 23 class action seeking similar relief); *Pridemore v. Jiffy Mini-Marts, Inc.*, No. 2:07-cv-249-LJM-WGH, 2008 WL 5062754 at *5 (S.D. Ind. Nov. 24, 2008) (same); *Woodard v. FedEx Freight East, Inc.*, 250 F.R.D. 178, 182 (N.D. Pa. 2008) (same).

265 (1986).  If the moving party carries its burden, the nonmoving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1985) (quoting FED. R. CIV. P. 56(e)) (emphasis in original).  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

Butterball alleges that it is entitled to summary judgment on each of the plaintiffs' FLSA and state law claims; that, as a matter of law, the plaintiffs are not entitled to declaratory or injunctive relief on any of its claims; and that any claims alleged on behalf of current or former Butterball employees who work at the Jonesboro plant or plants outside of Arkansas should be dismissed.  The Court will examine each of these arguments in turn below.

## A.      FLSA CLAIM

Butterball argues that it is entitled to summary judgment on the plaintiffs' first cause of action, which arises under the FLSA.  Butterball alleges that the plaintiffs can only recover for time spent donning and doffing "unique" protective gear and that such time is *de minimis* and thus noncompensable under the FLSA.  In the alternative, even if the plaintiffs can recover for time spent donning and doffing "non-unique" gear, Butterball contends that such time is still *de minimis*.

Under the Portal-to-Portal Act that amended the FLSA, an employer generally need not compensate employees for activities that are "preliminary or postliminary to" the "principal activity or activities" that an employee is engaged to perform.  29 U.S.C. § 254(a)(2) and (b); *see also Treece*

19

*v. Little Rock, Ark.*, 923 F. Supp. 1122, 1125 (E.D. Ark. 1996).  The term "principal activity or activities" includes all activities that are "integral and indispensable" to the principal activity.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37, 126 S. Ct. 514, 525, 163 L. Ed. 2d 288 (2005); *Treece*, 923 F. Supp. at 1125 (citing *Truslow v. Spotsylvania Co. Sheriff*, 783 F. Supp. 274, 277 (E.D. Va. 1992)); *see also Steiner v. Mitchell*, 350 U.S. 247, 255, 76 S. Ct. 330, 335, 100 L. Ed. 267 (1956) (Congress "did not intend to deprive employees of the benefits of the Fair Labor Standards Act where [the activities] are an integral part of and indispensable to their principal activities").

"The test for principal activities and integral and indispensable parts of such activities is 'whether [the activities] are performed as part of the regular work of the employees in the ordinary course of business.' " *Treece*, 923 F. Supp. at 1125-26 (quoting *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir. 1976)) (internal citations omitted).  Regular work in the ordinary course of business is that which is (1) required by the employer, (2) primarily for the benefit of the employer, and (3) necessary for the employee to perform her duties.[9]  *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007) (citing *Dunlop*, 527 F.2d at 401); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910-12 (9th Cir. 2004); *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 516 (D. Md. 2009); *Jordan*, 542 F. Supp. 2d at 804-07; *see also Treece*, 923 F. Supp. at 1126 (citing *Dunlop*, 527 F.2d at 401).  Here, there is evidence from which a finder of fact reasonably could

---

[9] "If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, changing clothes on the employer's premises at the beginning and end of the workday would be an integral part of the employee's principal activity.  On the other hand, if changing clothes is merely a convenience to the employee and not directly related to his principal activities, it would be considered as a 'preliminary' or 'postliminary' activity rather than a principal part of the activity."  29 C.F.R. § 790.8(c).

conclude that the donning and doffing at issue is required by Butterball, is primarily for Butterball's benefit, and is necessary for the employee to perform her duties.

Butterball urges the Court to hold that donning and doffing some protective gear labeled "non-unique" gear—such as hard hats, safety glasses, earplugs, and boots—is not "integral and indispensable" and therefore is not compensable as a matter of law.  To support this argument, Butterball relies primarily on three circuit court opinions.  In *Reich v. IBP, Inc.*, the Tenth Circuit refused to compensate employees for time spent donning and doffing hard hats, earplugs, safety footwear, safety goggles, and clean white outer garments because such activities are "not work within the meaning of the FLSA."[10]  38 F.3d 1123, 1125-26 (10th Cir. 1994).  Similarly, in *Gorman v. Consolidated Edison Corp.*, the Second Circuit determined that donning and doffing "generic gear" is a relatively effortless, noncompensable, preliminary task and not work under the FLSA.  488 F.3d 586, 592 (2d Cir. 2007).  The court reasoned that, while such gear is necessary to performing one's job, it is not "integral" or "essential to completeness."  *Id.*  The Seventh Circuit in *Pirant v. United States Postal Service* concluded that because the plaintiff "was not required to wear extensive and unique protective equipment . . . the donning and doffing . . . [was] not compensable under the FLSA."  542 F.3d 202, 208-09 (7th Cir. 2008).

As the plaintiffs point out, both *Pirant* and *Reich* are distinguishable from the case at hand because the gear at issue in those cases could be worn to and from work, whereas here the employees

---

[10] In *Reich*, the Tenth Circuit relied on the definition of "work" found in *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, and concluded that donning and doffing was not work because it did not involve or require "physical or mental exertion."  321 U.S. 590, 598, 64 S. Ct. 698, 703, 88 L. Ed. 949 (1944).  Shortly after *Tennessee Coal*, however, the Supreme Court "clarified that an activity need not require exertion to be considered work compensable under FLSA."  *Jordan*, 542 F. Supp. 2d at 799 (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 132-33, 65 S. Ct. 165, 89 L. Ed. 118 (1944)).

are required to don and doff onsite. *Pirant*, 542 F.3d at 208; *Reich*, 38 F.3d at 1126. Furthermore, neither *Pirant* nor *Gorman* involved donning and doffing in a meat processing plant—a distinction that is relevant due to the specific regulatory standards for food safety and quality that apply to meat processing plants. The plaintiffs cite to a number of cases holding donning and doffing at meat processing plants "integral and indispensable" and therefore compensable under the FLSA. *See, e.g.*, *De Asencio*, 500 F.3d at 373 (finding that the donning and doffing of all protective gear, including safety glasses, earplugs, boots, smocks, and hairnets, constitutes "work" as a matter of law); *Perez*, 610 F. Supp. 2d at 518 (donning and doffing is work because it is necessary to the principal work of poultry processing and is done for the benefit of the employer); *Anderson*, 604 F. Supp. 2d at 1355-56 ("Therefore, the Court is convinced that the home/work distinction has no power to trump the three factors set out in *Dunlop* and *Bonilla*."); *Jordan*, 542 F. Supp. 2d at 809 ("Thus, the donning and doffing of the frocks [constitute] . . . an integral and indispensable activity for which compensation is required."); *Garcia v. Tyson Foods, Inc.*, 474 F. Supp. 2d 1240, 1247 (D. Kan. 2007) (denying employer's motion for summary judgment); *Lopez*, 2007 WL 1291101, at **3-4 (denying employer's motion for summary judgment); *Fox v. Tyson Foods, Inc.*, No. 99CV01612, 2002 WL 32987224, at *10 (N.D. Ala. Feb. 4, 2002) (finding the donning and doffing of sanitary and safety equipment is "work" within the meaning of the FLSA).

These cases are persuasive. Much of the donning and doffing at Butterball's turkey processing plants in Ozark and Huntsville is essential to Butterball's ability to provide uncontaminated food products; it is not simply for the safety or convenience of the employees. "[T]he fact that such equipment is well-suited to many work environments does not make it any less integral or indispensable to these particular workers than more specialized gear." *Reich*, 38 F.3d at

1125. The Court will not hold as a matter of law that donning and doffing is not integral and indispensable to the principal activity of processing turkeys simply because the items donned and doffed are not unique.

Butterball also urges the Court to hold as a matter of law that the amount of time the plaintiffs spent donning and doffing their protective gear is *de minimis* as a matter of law. To determine whether otherwise compensable time is *de minimis*, courts balance three factors: "1) the practical administrative difficulty of recording the additional time; 2) the aggregate amount of compensable time; and 3) the regularity of the additional work." *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).

To support its *de minimis* argument, Butterball offers the deposition testimony of two employees who worked at the Butterball facility in Longmont, Colorado. According to Butterball, the employees testified that they spent anywhere from 4 to 8.5 minutes of unpaid time donning and doffing protective gear each day.[11] Butterball also cites its internal time studies taken at the Huntsville, Ozark, and Jonesboro facilities, which examine the amount of time employees take to don and doff all of their protective gear "to show that the process takes far less than ten minutes." However, as the plaintiffs point out, none of these studies takes into account that employees may don and doff their protective gear several times a day—before and after work, during breaks, and at lunch. The plaintiffs present the affidavit of Robert G. Radwin, who states that in the course of

---

[11] The Court notes that nowhere in the depositions did the employees state that it took 4 to 8.5 minutes to don or doff the protective gear; rather, this is the conclusion that Butterball reached after questioning the employees as to how long (in seconds or minutes) it took them to don or doff each item of protective gear. Butterball drew conclusions as to exactly how long the employees spent from their responses, which included estimates of "a few seconds" for some items.

nineteen formal time studies at poultry processing plants in the United States he has never found even one plant in which the amount of time spent donning and doffing protective gear was less than ten minutes per day.[12]  Based on Radwin's prior studies, the plaintiffs suggest that poultry processing employees usually spend more than an hour per week engaged in donning-and-doffing-related activities.  *Cf. Perez*, 610 F. Supp. 2d at 524 (adopting as the finding of the court Radwin's testimony that workers in a poultry processing plant spent 17 minutes per day donning and doffing).  Butterball has failed to show that there is no genuine issue of material fact as to how long the plaintiffs spent donning and doffing protective gear during the course of a workday.  Thus, Butterball is not entitled to summary judgment on the plaintiffs' FLSA claim.

**B.      CLAIMS ARISING UNDER THE ARKANSAS MINIMUM WAGE ACT**

The plaintiffs allege three separate causes of action under the Arkansas Minimum Wage Act, ARK. CODE ANN. § 11-4-201 *et seq.*  Under the MWA,

> any employer who pays any employee less than the minimum wages, including overtime compensation or compensatory time off as provided by this subchapter, to which the employee is entitled under or by virtue of this subchapter shall . . . [b]e liable to the employee affected for[ t]he full amount of the wages, less any amount actually paid to the employee by the employer . . . .

§ 11-4-218(a)(1).  The MWA provides a cause of action for employees who were paid less than minimum wage or were not paid overtime wages:

---

[12] The plaintiffs also note that in Phase 2 of discovery, Radwin plans to perform a time motion study of the plants involved in this litigation.  Butterball argues that the plaintiffs had ample opportunity to complete a time motion study in Phase 1 of discovery.  However, in granting a motion for protective order filed by Butterball, the Court expressly stated that "discovery related to the merits should not commence until the parties have conducted their Rule 26(f) conference."  Document #75.  Although the Court granted a motion filed by plaintiffs seeking to compel Butterball to grant Radwin access to the plants during Phase 1 discovery, the Court did not, as Butterball contends, order that Radwin's time and motion study be conducted during that inspection.

> An employee may bring an action for equitable and monetary relief against an employer, including the State of Arkansas or a political subdivision of the state, if the employer pays the employee less than the minimum wages, including overtime wages, to which the employee is entitled under or by virtue of this subchapter.

§ 11-4-218(e)(1). Specifically, the plaintiffs claim that Butterball violated the MWA in three ways: by failing to fully compensate employees for overtime, by failing to fully compensate employees for straight time, and by failing to give employees bona fide meal breaks. Butterball seeks summary judgment on each separate cause of action and on any claims for relief prior to October 1, 2006.

### 1.    *Overtime Wages*

Butterball seeks summary judgment on the plaintiffs' claim for overtime wages under the MWA to the same extent that it is entitled to summary judgment under the FLSA. Butterball cites specifically to an opinion by this Court for the proposition that, when a defendant is entitled to summary judgment on a plaintiff's FLSA claim, the defendant is also entitled to summary judgment on the plaintiff's MWA claim. *See Phillips v. Pine Bluff*, 2008 WL 2351036, at *5 (E.D. Ark. June 4, 2008) ("It does not appear . . . that the Arkansas statute imposes a requirement different from that imposed by the Fair Labor Standards Act."). In this case, however, the Court has not granted Butterball's motion for summary judgment on the FLSA claim. Butterball offers no other reason for the Court to dismiss the plaintiffs' claim for overtime wages under the MWA. As a result, its motion for summary judgment on the plaintiffs' second cause of action is denied.

### 2.    *Straight Time Wages*

Butterball also seeks summary judgment on the plaintiffs' third cause of action, which alleges that the plaintiffs are entitled to recover for "straight time," or time under forty hours per week for which they should have been but were not paid. The MWA provides a cause of action for employees

25

"if the employer pays the employee less than the minimum wages, including overtime wages." ARK. CODE ANN. § 11-4-218(e)(1).  However, the language of the statute does not provide a cause of action to recover straight time wages when the employee's wage exceeds the minimum wage and no overtime is involved.[13]

In their complaint, the plaintiffs suggest that a cause of action for straight time wages comes from 010-14-002 ARK. CODE R. § 108.  The Court finds no support for this argument.  In their response to Butterball's motion for summary judgment, the plaintiffs disregard section 108 and argue instead that a cause of action for straight time wages is found in section 109(A), which states in part:

> In determining the number of hours for which overtime compensation is due, all hours worked by an employee for an employer in a particular workweek must be counted.  Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard.  This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid.

29 C.F.R. § 778.315 (internal citation omitted).[14]  Under this regulation, plaintiffs are entitled to recover all wages (including wages for straight time) if they have a claim for overtime**.**  However, the regulation falls short of creating a cause of action for straight time wages for employees who have worked less than forty hours a week and who have been paid the minimum wage.  *See Arnold v. Arkansas*, 910 F. Supp. 1385, 1393-94 (E.D. Ark. 1995) (finding the court lacks jurisdiction under

---

[13] No argument is made here that any employee's wage would fall below the minimum wage when uncompensated time is included except as to the claim for overtime.

[14] 010-14-002 ARK. CODE R. § 109(A) was enacted pursuant to the MWA. Section 109(A), in turn, incorporates 29 C.F.R. part 778 in its entirety.  The cited language is found in 29 C.F.R. § 778.315.

29 C.F.R. § 778.315 over claims for straight time compensation when there is no claim for overtime).  Because there is no cause of action under the MWA for straight time wages in weeks during which the employees were paid in excess of the minimum wage and worked no overtime, Butterball is entitled to summary judgment on the plaintiffs' third cause of action.

### 3.    *Bona Fide Meal Breaks*

The plaintiffs also allege that Butterball violated 010-14-002 ARK. CODE R. § 108(C), which was enacted pursuant to the MWA, by failing to compensate the plaintiffs for their meal breaks.  The Rule provides in pertinent part:

> Bona fide meal periods are not worktime.  Bona fide meal periods do not include coffee breaks or time for snacks.  These are rest periods.  The employee must be completely relieved from duty for the purposes of eating regular meals.  Ordinarily 30 minutes or more is long enough for a bona fide meal period.  A shorter period may be long enough under special conditions.  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

010-14-002 ARK. CODE R. § 108(C)(2).  Although the Rule defines the term "bona fide meal period," it does not provide a separate cause of action under the MWA.  *See id.*  While the plaintiffs may seek overtime compensation for donning and doffing during meal periods in Count 2 of the complaint if the meal periods were not "bona fide," no separate cause of action exists under the statute.  Thus, Butterball is entitled to summary judgment on the plaintiffs' fourth cause of action for bona fide meal breaks.

### 4.    *Claims for Damages Suffered Prior to October 2006*

Prior to October 1, 2006, legal action to enforce the MWA could be brought only by the Director of the Department of Labor.  The General Assembly amended the Act in 2006 to provide employees with the right to bring an action to recover minimum wages, including overtime.  That

amendment became effective on October 1, 2006.  Butterball seeks to dismiss any claims for damages under the MWA arising prior to October 1, 2006, because before that date the MWA did not provide employees with a right of action for unpaid overtime.  The plaintiffs agree that, prior to October 1, 2006, they did not have a private right of action for overtime compensation under the MWA.  However, the plaintiffs argue that they are entitled to relief for damages suffered prior to October 1, 2006, because the amendment to the statute was remedial, and as a result, it applies retroactively.

Arkansas courts observe a strict rule of statutory construction against retroactive operation of statutes.  Generally, "all statutes are to be construed as having only a prospective operation, unless the purpose and intention of the legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used." *Union Nat'l Bank v. Barnhart*, 308 Ark. 190, 199, 823 S.W.2d 878, 882 (1992).  In other words, the operation of a statute is prospective "unless the words are so clear, strong and imperative as to have no other meaning." *Ark. Rule Med. Practice Student Loan and Scholarship Bd. v. Luter*, 292 Ark. 259, 261, 729 S.W.2d 402, 403 (1987).  "Any doubt is resolved against retroactivity and in favor [of] prospectivity only." *Id.*

However, this rule does not apply to procedural or remedial legislation.  *Aka v. Jefferson Hosp. Assoc.*, 344 Ark. 627, 642, 42 S.W.3d 508, 518-19 (2001) (applying a decision retroactively as to the appellant to further the remedial intent of a wrongful-death statute).  Legislation found to be remedial must be construed "by giving appropriate regard to the spirit that promoted [the] statute's enactment, the mischief sought to be abolished, and the remedy proposed." *Id.* at 642, 42 S.W.3d at 518.  Retroactive application is appropriate where the remedial statutes "do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to

enforce an existing right or obligations." *Sewell v. Phillips Petroleum Co.*, 197 F. Supp. 2d 1160, 1171 (W.D. Ark. 2002) (quoting *Aka*, 344 Ark. at 642, 42 S.W.3d at 518-19).

Courts have found that other minimum wage laws similar to the MWA, including the FLSA, are remedial in nature. *See, e.g.*, *Alvarez*, 546 U.S. at 25, 126 S. Ct. at 519 (noting the remedial purposes of the FLSA); *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1192 (D.C. 1980) (considering the D.C. Minimum Wage Act a remedial statute); *Archie v. Grand Cent. P'Ship, Inc.*, 997 F. Supp. 504, 535 (S.D.N.Y. 1998) (finding the New York State Minimum Wage Act, which encompasses claims for overtime wages, is remedial legislation designed to relieve financial hardship of employees); *Davis v. Sulcowe*, 205 A.2d 89, 91 (Pa. 1964) (finding an amendment to the Pennsylvania Minimum Wage Act remedial in nature); *Broach v. McPherson*, 222 Ark. 62, 65, 257 S.W.2d 565, 567 (1953) (considering the humanitarian and remedial character of the FLSA). The Arkansas MWA is no different; the Act and its 2006 amendments are remedial in nature.

The General Assembly did not expressly declare that the 2006 amendments to the Arkansas MWA would apply retroactively. However, section 11-4-204 requires the MWA to be "liberally construed in favor of its purposes," which include protecting workers' health, efficiency, and general well-being and protecting employers from the effects of unfair competition resulting from low wage levels. ARK. CODE ANN. § 11-4-202. The General Assembly adopted section 11-4-204 in the same Act as section 11-4-218(e)(1), which provides employees with a cause of action under the MWA. *See* 2006 Ark. Laws 1st Ex. Sess. Act 16 (H.B. 1033). In other words, the General Assembly simultaneously adopted a provision to provide employees with a cause of action for unpaid minimum wages and overtime and, in the same Act, declared that the Act should be liberally construed. Both sections became effective on October 1, 2006. ARK. CODE ANN. §§ 11-4-204, 218(e).

29

Permitting the plaintiffs to seek compensation for overtime worked before October 1, 2006, will not create an obligation to pay overtime compensation that did not exist before that date. Butterball was obligated to pay overtime before October 1, 2006. What changed on October 1, 2006, was not the employer's duty to pay overtime or the employer's liability for failing to pay overtime; what changed was the means by which an employee might recover. Before October 1, 2006, the Director of the Department of Labor and only the Director could bring an action to recover overtime wages for the employee; as of October 1, 2006, an employee may bring the action. Under these circumstances, it would be illogical and contrary to the requirement that the MWA be liberally construed to bar recovery for overtime due before October 1, 2006. Thus, Butterball is not entitled to summary judgment on the plaintiffs' claims for damages sustained prior to October 1, 2006.

## C.   BREACH OF CONTRACT CLAIM

Butterball contends that it is entitled to summary judgment on the plaintiffs' common law breach of contract claim for two reasons.[15] First, Butterball argues that this cause of action is preempted by the FLSA. The Eighth Circuit has not yet addressed whether the FLSA preempts state law contract claims, and the Court will not decide this claim on that basis. *See Stubbs v. Ford Motor Co.*, No. 05-0923-CV-W-FJG, 2008 WL 926404, at *3 (W.D. Mo. Mar. 31, 2008).

Alternatively, Butterball argues that, as a matter of law, it did not contract with its employees to compensate them for donning and doffing because there was no meeting of the minds. "[I]t is well settled that in order to make a contract there must be a meeting of the minds as to all terms, using objective indicators." *Alltel Corp. v. Sumner*, 360 Ark. 573, 576, 203 S.W.3d 77, 80 (2005).

---

[15] The Court notes that the plaintiffs' raise the breach of contract claim in their individual capacities only–they did not file a motion to certify a class for this claim.

Both parties must manifest assent to the particular terms of the contract.  *Id.*  Furthermore, "[f]or a party to assent to a contract, the terms of the contract must be effectively communicated."  *Id.* at 577, 203 S.W.3d at 80 (citing *Crain Indus., Inc. v. Cass*, 305 Ark. 566, 810 S.W.2d 910 (1991)).  No evidence has been presented that the parties agreed that employees could be paid for time spent donning and doffing.  The plaintiffs have testified in deposition that the topic was never discussed.  Therefore, the plaintiffs can present no evidence that they and Butterball agreed that Butterball would compensate them for time spent donning and doffing.

The plaintiffs contend that the mere existence of an employer-employee relationship creates a contractual obligation to pay for "all hours worked," which includes time spent donning and doffing protective gear.  However, none of the cases they cite supports this contention.  It is undisputed that Butterball never agreed to compensate employees for the precise amount of time they spend donning and doffing protective gear.  As a result, Butterball is entitled to summary judgment on the plaintiffs' breach of contract claim.

D.    **EQUITABLE RELIEF**

In their complaint, the plaintiffs seek "a declaratory judgment that the practices complained of herein are unlawful under Arkansas law," as well as "appropriate equitable and injunctive relief." Butterball argues that the named plaintiffs do not have constitutional standing to seek these forms of relief because they are former but not current Butterball employees.  In other words, the plaintiffs fail to meet the standing requirements of Article III.

"Without a plaintiff's satisfaction and demonstration of the requirements of Article III standing, a federal court has no subject matter jurisdiction to hear the merits of a plaintiff's . . . claim."  *Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care,*

*L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).  In order to have standing to bring a claim, plaintiffs must allege an "injury in fact."  *Mosby*, 418 F.3d at 933.  To allege an "injury in fact," a plaintiff seeking prospective relief against future conduct of defendants who caused injury in the past "must show that she faces a real and immediate threat that she would again suffer similar injury in the future."  *Id.* (internal citations omitted).  In other words, the plaintiff must demonstrate that her individual harm would be redressed by the relief sought.  "[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs . . . .  Standing cannot be acquired through the back door of a class action."  *Allee v. Medrano*, 416 U.S. 802, 828-29, 94 S. Ct. 2191, 2207, 40 L. Ed. 2d 566 (1974).  Because the named plaintiffs do not work for Butterball and do not offer evidence that they will work there in the future, they have not alleged an injury in fact that could be redressed by prospective relief.  Thus, their claims for prospective relief, including injunctive relief and declaratory judgment, must be dismissed.

**E.      CLAIMS AGAINST BUTTERBALL'S JONESBORO FACILITY AND OUT-OF-STATE FACILITIES**

Butterball also asks the Court to dismiss the plaintiffs' claims on behalf of employees at the Jonesboro facility and out-of-state facilities.  Butterball argues that the plaintiffs do not have standing to pursue such claims because none of the named plaintiffs worked at that those facilities or sought to certify a class that would include the employees at those facilities.  The plaintiffs contend that they should be allowed to bring a claim against the Jonesboro plant because, like the Ozark and Huntsville plants, the Jonesboro plant has adopted a pay system that violates the FLSA.

As discussed above, to establish standing, plaintiffs must demonstrate a "personal stake in the outcome" to "assure that concrete adverseness which sharpens the presentation of issues."  *Baker*

*v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703, 7 L. Ed. 2d 663 (1962).  Here, the plaintiffs have no

personal stake in what happens at the Jonesboro or out-of-state facilities and would not stand to gain

directly from any form of relief they seek from those plants.[16]  As a result, the plaintiffs lack standing

to pursue a claim against Butterball's Jonesboro and out-of-state facilities, and the plaintiffs' claims

against these facilities are dismissed.

## IV.

Finally, Butterball has filed a motion to amend the temporal scope of one of its good faith

defenses recognized by the FLSA in 29 U.S.C. §§ 259 and 260.  The amended defense would read

in pertinent part:

> With regard to both the time periods preceding and following the Supreme Court's
> opinion in *IBP, Inc. v. Alvarez*, Defendant's actions have been in good faith and
> based upon reasonable grounds for believing that such violations were not in
> violation of the FLSA within the meaning of 29 U.S.C. § 260.

As it now stands, the defense only applies to the time period preceding *Alvarez*.

When a party moves the court for leave to file an amended pleading, "[t]he court should

freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).  A district court can refuse to

allow an amendment only if it will result in "undue delay, bad faith or dilatory motive on the part

of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of

---

[16] The Court also notes that there are significant differences between the pay practices at
Jonesboro and those at the Huntsville and Ozark facilities.  Production employees at Jonesboro
are paid punch to punch plus ten minutes of plug time for donning-and-doffing-related activities.
Most of the production employees at Huntsville and Ozark are paid under the gang time system.
Production employees at Jonesboro are paid ten minutes of plug time per day to compensate
them for donning and doffing, whereas the employees at Ozark and Huntsville are paid six
minutes of plug time.

amendment." *Dennis v. Dillard Dept. Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). There is no absolute right to amend, *Baptist Health v. Smith*, 477 F.3d 540, 544 (8th Cir. 2007), and the decision is a discretionary matter for the district court to resolve, *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994) (citing *Corsica Livestock Sales v. Sumitomo Bank of Cal.*, 726 F.2d 374, 377 (8th Cir. 1983)). The burden is on the party opposing the motion to show that it will be unfairly prejudiced. *Dennis*, 207 F.3d at 525 (citing *Mercantile Trust Co. v. Inland Marine Prods. Corp.*, 542 F.2d 1010, 1012 (8th Cir. 1976)).

The plaintiffs argue that they will be prejudiced by an amendment to the pleadings because they made numerous strategic decisions believing that Butterball did not allege subjective good faith after November 8, 2005, the date of the *Alvarez* decision. Specifically, the plaintiffs argue that they decided to forego MDL status; to split the instant action into three separate actions; and to agree to certain deadlines, phasing, and structuring of the proceedings were decisions based in part on the temporal scope of the twenty-third of Butterball's thirty-three affirmative defenses. They also allege that their motion for certification and discovery may have been jeopardized by the defendant's failure to properly characterize its good faith defense.

In spite of these general arguments, the plaintiffs fail to provide any specific examples of what they would have done differently had Butterball raised the amended defense in its original pleadings. Phase 2 discovery on the merits has not begun, so it is difficult to see how the plaintiffs will be prejudiced by permitting the amendment. The motion for leave to amend is granted.

## CONCLUSION

For the reasons stated above, the plaintiffs' motion for collective action under the FLSA is GRANTED.  The Court certifies the FLSA class as stated in the plaintiffs' motion for certification. Document #80.  The FLSA class includes:

> All persons who are or were employed by Butterball, LLC ("Butterball"), as non-exempt, hourly paid, production employees at Butterball's turkey processing plants located in Huntsville and Ozark, Arkansas, who have been employed by Butterball any time during the three-years prior to the date of the Court's ruling granting certification.

The Court DENIES the motion for certification of a class pursuant to Rule 23.

The Court names Helmert, Brown, and West as class representatives for the FLSA collective action and appoints plaintiffs' counsel of record as class counsel.  The parties are instructed to conduct their Rule 26 conference on or before January 11, 2010, and as a part of that conference to confer and to jointly submit a proposed collective action notice and an opt-in form for subsequent approval by the Court.  These forms, along with the Rule 26 report, should be submitted no later than January 18, 2010.

The defendant's motion for summary judgment is GRANTED in part and DENIED in part. Document #76.  The Court denies the defendant's motion for summary judgment as to Counts 1 and 2 of the plaintiffs' complaint and the plaintiffs' claims for damages under the MWA arising prior to October 1, 2006.  The Court grants the defendant's motion for summary judgment as to Counts 3, 4, and 5 of the complaint; the plaintiffs' plea for equitable relief; and any claims on behalf of employees at Butterball's Jonesboro and out-of-state facilities.

The defendant's motion for leave to amend the answer and affirmative defense is GRANTED.  Document #95.

IT IS SO ORDERED this 15th day of December, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE