UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| Sheila Helmert, Wilma Brown, and Lori West, on behalf of themselves and other similarly situated, | Civil No.  4:08-cv-0342 JLH |
| Plaintiffs and Collective Action Representatives, | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE APPLICATION OF THE U.S. DEPARTMENT OF LABOR'S CONTINUOUS WORKDAY RULE** |
| -v- | |
| Butterball, LLC, | |
| Defendant. | |

## INTRODUCTION

By this motion, Plaintiffs seek an Order determining, by factual event, the moment compensation begins and the moment compensation ends for Butterball production workers under the Fair Labor Standards Act's ("FLSA") continuous workday regulation.  29 C.F.R. § 785.6 (2010).  Butterball concedes that "[b]ased on the 'continuous workday theory,' **the Court** will [ ] have to determine the exact times when each employee performs their first and last compensable events."  (Def.'s Response to Pls.' Mot. for Collective and Class Action Cert. at 16 (ECF No. 87) (emphasis added).)

Under the undisputed facts at issue, the Plaintiffs believe that compensation for production workers must start with the "first touch" of any required form of personal protective equipment ("PPE") on the premises of Butterball's Huntsville and Ozark turkey processing facilities.  Plaintiffs' "first touch" rule is consistent with case law and the United States Department of Labor's ("USDOL") position.  (*See* Ex. A at 1 ("the compensable day starts once

the employee has obtained the gear required to be stored on the premises by taking an item out of a bin, a locker or another designated storage area.").)[1]

Consistent with the USDOL's position, the Plaintiffs further believe that compensation is owed through the "last touch" of the last doffed or sanitized item on-site before a bona fide meal break or the end of the shift.   Plaintiffs believe that the "first touch/last touch" rules apply to both the start and end of work shifts, and the start and end of any unpaid bona fide meal break.

This Court has already determined the undisputed facts relied upon by the Plaintiffs for the instant motion by way of Order dated December 15, 2009 (ECF No. 109) (hereinafter "12/15/09 Order").  The Court determined, and the parties did not dispute that:

> Every production employee at the Ozark and Huntsville facilities **is required** to wear some form of protective gear, which may include but is not limited to smocks, bump caps, hard hats, ear plugs, hair nets, coveralls, rubber boots, rubber gloves, steel toed boots, liners, latex gloves, and safety glasses.  **Butterball requires** its employees to don and doff much of their protective gear **onsite**, either exchanging it for clean gear each day or storing it in a locker on the premises.

(12/15/09 Order at 2 (ECF No. 109) (emphasis added).)

Based upon these simple facts, the "continuous workday" regulation and the USDOL's interpretations of the regulation, this Motion seeks to determine that compensation for Butterball's Ozark and Huntsville employees begins upon the first touch of **any**[2] required protective gear item enumerated above onsite through the "last touch" of any such item onsite.

---

[1] "Ex." refers to the exhibits attached to the Affidavit of T. Joseph Snodgrass in Support of Plaintiffs' Motion for Partial Summary Judgment on the Application of the USDOL's Continuous Workday Rule ("Snodgrass Aff."), filed concurrently herewith.

[2] This Court previously rejected Butterball's argument that the so-called "unique" or "non-unique" nature of the PPE donned, doffed and sanitized by Plaintiffs on a daily basis somehow determined compensability of those activities. 12/15/09 Order at 22.

## ARGUMENT

## I.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT CONCERNING APPLICATION OF THE USDOL'S "CONTINUOUS WORKDAY" RULE.

The first issue raised by Plaintiffs' motion concerns the level of judicial deference to be afforded to both the USDOL's regulations and its interpretations of those regulations.  It is well-established that issues involving federal agency deference under the *Skidmore* and *Chevron* standards[3] always involve questions of law appropriate for summary judgment.  No reasonable arguments can be made that a jury should consider *Skidmore* or *Chevron* issues, and that a party may create "material facts" out of agency determinations.  *See Hi Tech Parmacal Co. v. FDA*, 587 F. Supp. 2d 13, 18 (D.D.C. 2008).  Here, Plaintiffs maintain that the USDOL's longstanding "continuous workday" regulation, as well as the agency's interpretations of that regulation, is entitled to controlling deference.  This issue is appropriately considered on summary judgment.

As to the second issue presented by Plaintiffs' motion concerning controlling law that requires application of the USDOL's "continuous workday" rule to compute damages in this case, partial summary judgment is appropriate because no material facts are in dispute.  Fed. R. Civ. P. 56(a) (plaintiff may move for partial summary judgment "on all or part of a claim"); Fed. R. Civ. P. 56(c)(2) (summary judgment is warranted where "there is no genuine issue of material fact and … the moving party is entitled to a judgment as a matter of law").  Plaintiffs' motion presents a pure question of law ripe for this Court's determination on summary judgment.

---

[3] *See Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944) and *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

## II.   THE COURT SHOULD DEFER TO THE USDOL'S INTERPRETATIONS OF ITS "CONTINUOUS WORKDAY" REGULATION.

### A.   The USDOL's Longstanding "Continuous Workday" Regulation.

The purpose of the FLSA is to ensure that "the minimum standard of living necessary for health, efficiency, and general well-being" is maintained.  29 U.S.C. § 202(a); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).  A core requirement of the FLSA is that employers must compensate their employees for all the time the employees are required to "work."  29 U.S.C. §§ 206 and 207.  Although the FLSA does not specifically define the terms "work" or "workweek," the Supreme Court has defined these terms broadly.  "Work" includes anything that is controlled or required by the employer, irrespective of the quantum or degree of mental or physical exertion involved.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005); *see also Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946) (broadly defining the "statutory workweek" as including "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a proscribed workplace").

The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq.* ("Portal Act"), created a limited exception to this general rule.  It excludes from compensation "walking" to and from "the actual place of performance" of an employee's principal activity or activities, and other "preliminary" and "postliminary" activities, but only when they occur outside the "workday" – "either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a).  Other than these express exceptions, the Portal Act did not change the Supreme Court's earlier descriptions of the term "work" and "workweek."  *Alvarez*, 546 U.S. at 28.

Shortly after the enactment of the Portal Act, and consistent with its responsibilities under the FLSA, *see* 29 U.S.C. § 204, the USDOL promulgated a regulation concluding that the Portal Act had no effect on the computation of hours that are worked "within" the workday.  That regulation states in relevant part:

> 29 C.F.R. 790.6 – Periods within the "workday" unaffected.
>
> (a) Section 4 of the Portal Act does not affect the computation of hours worked within the "workday" proper … and its provisions have nothing to do with the compensability under the [FLSA] of any activities engaged in by an employee during that period…. [T]o the extent that activities engaged in by an employee occur after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday, the provisions of [section 4] have no application. **Periods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked** to the same extent as would be required if the Portal Act had not been enacted.  The principles for determining hours worked within the "workday" proper will continue to be those established by the [FLSA] without reference to the Portal Act, which is concerned with this question only as it relates to time spent outside the "workday" in activities of the kind described in section 4.
>
> (b) **"Workday" as used in the Portal Act means, in general, the period between the commencement and completion on the same workday of an employee's principal activity or activities**.  It includes all time within that period whether or not the employee engages in work throughout all of that period.

*Id.* (emphasis added; internal citations omitted).  The USDOL has thus adopted a "continuous workday rule" that requires compensation for all activities that occur after an employee engages in his first principal activity and before he finishes his last principal activity on a single workday. *See Alvarez*, 546 U.S. at 29.

In other words, pursuant to the Portal Act, the compensable "workday" is bound by an employee's first and last principal activities, and "includes all time within that period whether or

not the employee engages in work throughout all of that period." 29 C.F.R. § 790.6(b).[4]   This means that activities such as donning, doffing, and walking (among others) are compensable as long as they occur after the workday has begun, subject to one or more exclusions or exemptions. *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 517 (D. Md. 2009).

The regulation appearing at 29 C.F.R. § 790.6 was first promulgated on November 18, 1947, *see* 12 Fed. Reg. 7655, and was ratified by Congress in 1949 when former section 16(c) of the FLSA was enacted.  *See Steiner v. Mitchell*, 350 U.S. 247, 255, n.8 (1956).  The regulation has, at all times, remained in effect since its promulgation nearly 63 years ago.  *See Alvarez*, 546 U.S. at 29.

**B.     The USDOL Has Repeatedly Reiterated Its Policy Requiring Employers to Pay for All Time Spent Donning, Doffing, Waiting, Walking and Sanitizing During the Continuous Workday.**

In generic opinion letters, the USDOL has repeatedly and consistently stated that plant employers in a variety of industries, including the turkey processing industry, must compensate their employees for all time employees spend donning, doffing, waiting, walking and sanitizing during the continuous workday:

- USDOL Op. Ltr.,[5] dated March 9, 1949 (unspecified industry – changing clothes and washing is compensable)

---

[4] The USDOL's "hours worked" regulations appearing at 29 C.F.R. Part 785 exclude from compensable time during the continuous workday only two discrete periods: "bona fide meal periods," 29 C.F.R. § 785.19, and off-duty "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes."  29 C.F.R. § 785.16.  Indeed, the regulation at 29 C.F.R. § 785.7 states that compensable time "ordinarily includes all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."  *Id.* (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 690-91).  The "hours worked" regulations have their origin in Interpretative Bulletin No. 13, which was originally issued by the USDOL in July 1939 (shortly after the enactment of the FLSA), and which was in effect when Congress enacted the Portal Act.  *See Brock v. Mercy Hosp. and Med. Ctr.*, No. 84-1309, 1986 WL 12877, at *6-7, n.1 (S.D. Cal. May 6, 1986).  All cited unpublished orders and decisions are attached as Exhibit E to the Snodgrass Aff.

[5] All cited USDOL Opinion Letters are attached as Exhibit D to the Snodgrass Aff.

- USDOL Op. Ltr., dated May 8, 1950 (unspecified industry – changing clothes compensable when part of principal activity, as described in 29 C.F.R. Part 790).

- USDOL Op. Ltr., dated February 28, 1961 (unspecified industry – "[i]f an employee cannot perform his duties without putting on certain clothes, the time spent in changing clothes on the employer's premises at the beginning and end of the workday must be counted as hours worked").

- USDOL Op. Ltr., dated January 25, 1967 (turkey processing employees – "the time employees are required to spend in activities such as changing clothes and washing up on the plant premises must be counted as compensable working time").

- USDOL Op. Ltr., dated March 14, 1967 (factory workers – "time spent in washing up and changing clothes at the beginning and end of the workday must be counted as working time under the act if required by the employer, the nature of the job, or by statute").

- USDOL Op. Ltr., dated July 12, 1973 (mill workers – clothes changing compensable where clothing was required for sanitary purposes and could not be worn outside).

On January 15, 2001, the USDOL issued an Opinion Letter reiterating its position that the FLSA requires meat processing employers to record the "actual time" plant employees spend engaging in donning and doffing activities during the course of the continuous workday:

> [I]t is the Department's longstanding position that, as a general matter, **compensable hours worked include all time from the moment each employee performs the first principal activity of the employee's workday until the last principal activity is concluded**, less any bona fide meal periods or bona fide off-duty time. An employer must compensate its employees for any activity that is an integral and indispensable part of the employee's principal activities, **including the putting on, taking off and cleaning of personal protective equipment, clothing or gear** that is required by law, by rules of the employer or by the nature of the work. It should also be noted that the meal period may not include any time performing "work," and that time spent donning and doffing of personal protective equipment, clothing or gear before or after the meal period is compensable.
>
> Also, a number of meatpacking companies have asked the Department if it would be permissible to pay employees wages based on an average amount of time that all employees work. **I would like to reiterate that in order to comply with the FLSA and its implementing regulations (see 29 C.F.R. 516.2), a company must record and pay for each employee's actual hours of work, including compensable time spent putting on, taking off and cleaning his or her protective equipment, clothing or gear.**

USDOL Op. Ltr., 2001 WL 58864 (Jan. 15, 2001) (emphasis added).

In addition, the Secretary of Labor has filed and resolved numerous enforcement actions against members of the poultry processing industry, seeking compensation under the FLSA for employee donning and doffing during the continuous workday. *See, e.g., Solis v. Tyson Foods, Inc.*, No. 02-cv-1174 (N.D. Ala., filed May 9, 2002) (consent judgment dated June 4, 2010); *Solis v. Pilgrim's Pride Corp.*, No. 1:08-cv-01011 (W.D. Ark., filed August 6, 2007) (consent judgment dated Feb. 1, 2010); *Chao v. George's Processing, Inc.*, No. 02-3479-CV (W.D. Mo., filed Nov. 20, 2002) (consent judgment dated May 8, 2006); *Chao v. Perdue Farms, Inc.*, No. 02-cv-33 (M.D. Tenn., filed May 9, 2002) (consent judgment dated May 10, 2002).[6]

### C. The Supreme Court's Reaffirmation and Application of the USDOL's Continuous Workday Rule.

On November 8, 2005, the Supreme Court unanimously reaffirmed the USDOL's continuous workday rule, requiring an employer to compensate an employee for all activities that occur between the first and last principal activities of the employee's workday. *See Alvarez*, 546 U.S. at 29 (quoting 29 C.F.R. § 790.6 and noting that "no party disputes the validity of the continuous workday rule"). The Supreme Court reiterated its long-held view that any activity that is integral and indispensable to a principal activity is itself a principal activity is therefore compensable under the FLSA. *See id.* at 37.

The unanimous Supreme Court accepted the lower courts' determinations that the donning and doffing of required PPE were integral and indispensable to poultry and meat processing employees' principal work activities and held that such activities commenced and concluded the continuous workday. *Id.* at 32-33. The Supreme Court then proceeded to apply

---

[6] The cited Tyson Foods, Inc., Pilgrim's Pride Corp. and George's Processing, Inc. consent judgments are attached as Exhibit C to the Snodgrass Aff. The Perdue Foods, Inc. consent judgment is not available on PACER. Accordingly, the *Perdue Farms* docket report is also attached at Exhibit C.

the continuous workday rule broadly, holding that "during the continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [29 U.S.C. §254(a)], and as a result is covered by the FLSA." *Id.*  The Supreme Court further held that "[b]ecause doffing gear that is 'integral and indispensable' to employees' work is a 'principal activity' under the statute, the continuous workday rule mandates that time spent waiting to doff [as opposed to time spent waiting to don in that case] is not affected by the [Portal Act] and is instead covered by the FLSA." *Id.* at 40.   *Alvarez* thus instructs that the continuous workday itself provides the appropriate benchmark for determining compensability.

> **D.     The USDOL's Interpretation Of The Continuous Workday Rule Post-*Alvarez*.**

Following the Supreme Court's decision in *Alvarez*, on May 31, 2006, the USDOL issued formal guidance on the compensability of donning and doffing activities under the FLSA in the form of an Advisory Memorandum.  *See generally* Ex. A.  In the Advisory Memorandum, the USDOL stated that the *Alvarez* decision upheld the "continuous workday" principle incorporated in the USDOL's regulations, *id.* at 2, and affirmed the USDOL's long-held view that employee time spent donning and doffing PPE in meat and poultry processing plants, as well as any walking and waiting time that occurs between these two end-points, is compensable:

> The Supreme Court's unanimous decision in *Alvarez* holds that employees who work in meat and poultry processing plants must be paid for the time they spend walking between the place where they put on and take off protective equipment and the place where they process the meat or poultry.  **The Court determined that donning and doffing gear is a "principal activity"** under the Portal to Portal Act, 29 U.S.C. 254, and thus time spent in those activities, as well as any walking an waiting time that occurs after the employee engages in his first activity and before he finishes his last principal activity, is part of a "continuous workday" **and is compensable** under the Fair Labor Standards Act (FLSA), 29 U.S.C. 201 et seq.

*Id.* at 1 (emphasis added; internal footnote omitted).

Further, the USDOL specifically advised that the obtaining of PPE at the beginning of the workday is a principal activity that triggers the commencement of the compensable workday:

> Since, like donning, obtaining the gear (as opposed to waiting to obtain the gear), "is always essential if the worker is to do his job," **the compensable workday starts once the employee has obtained the gear required to be stored on the premises by taking an item out of a bin, a locker or another designated storage area**.

*Id.* at 1, n.1 (emphasis added).  The USDOL stated that its long-held view that the retrieval of the first item of PPE constitutes the act that triggers the continuous workday was consistent with the First Circuit's holding in *Tum v. Barber Foods, Inc.*, which held that donning necessarily includes the retrieval or obtaining of PPE.  Ex. A at 1, n.1 (citing *Tum*, 331 F.3d 1, 8-9 (1st Cir. 2003)); *see Tum*, 331 F.3d at 8-9 ("[T]o don an item of clothing, for legal purposes, means to obtain and put that item on.  To doff an item of clothing or equipment for these purposes means to take it off and place it in a bin or locker"); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003) ("[I]t is beyond cavil that the donning, doffing, and retrieving of protective gear is, at both broad and basic levels, done for the benefit of IBP").

On March 25, 2010, the USDOL reiterated its position on the proper parameters of the continuous workday in an *amicus* brief it submitted to the Fourth Circuit in *Perez v. Mountaire Farms, Inc.*, No. 09-1917 (4th Cir.).  *See* Ex. B, Brief for the Secretary of Labor as *Amicus Curiae* in Support of Plaintiffs-Appellees, *Perez v. Mountaire Farms, Inc.*, No. 09-1917, 2010 WL 1130344 (4th Cir.), filed on March 25, 2010 (hereinafter "03/25/10 USDOL Amicus Brief").  In its *amicus* filing, the USDOL advised the Fourth Circuit that the trial court had properly concluded that "the employees must be paid for all activities, including any walking, waiting, and washing (but excluding bona fide meal periods), that occur between their first activity of

donning and the last activity of doffing." *Id.* at *12 (citing *Alvarez*, 546 U.S. at 37). The USDOL further advised that it remained the agency's longstanding position that "donning" necessarily includes the initial act of obtaining equipment. *See id.* at *6, n.1 (citations omitted).

**E.    The USDOL's Interpretation Of Its Longstanding Regulations, As Well As Its Interpretation Of Those Regulations As Expressed In Its May 31, 2006 Advisory Memorandum, Are Entitled To Controlling Deference.**

Congress has charged the USDOL with the administration and enforcement of the FLSA. 29 U.S.C. § 204; *see also Skidmore v. Swift*, 323 U.S. 134, 138 (1944) (identifying the various duties imposed upon the Secretary of Labor by Congress). "The power of an administrative agency to administer a congressionally created … program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984). "When an agency fills such a 'gap' reasonably, and in accordance with other applicable (e.g., procedural) requirements, the courts accept the result as legally binding." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007) (determining that USDOL's FLSA regulations were legally binding).

As previously discussed, Congress did not specifically define the terms "work," "workweek" or "workday" in the FLSA, thus leaving open a specific gap for the USDOL to fill. *See Alvarez*, 546 U.S. at 25. In light of these gaps in the Act, and consistent with the Supreme Court's broad definition of work, the USDOL has issued interpretative regulations addressing the compensability of "hours worked" under the FLSA, *see* 29 C.F.R. Part 785, and the Portal Act, *see* 29 C.F.R. Part 790. The USDOL's introductory statement to Part 790 states, in relevant part:

29 C.F.R § 790.1 – Introductory Statement

(b) It is the purpose of this part to outline and explain the major provisions of the Portal Act as they affect the application to employers and employees of the

provisions of the [FLSA]…. [T]he primary purpose of this part is to indicate the effect of the Portal Act upon the future administration and enforcement of the [FLSA], with which the Administrator of the Wage and Hour Division is charged under law….

(c) The correctness of an interpretation of the Portal Act, like the correctness of an interpretation of the [FLSA], can be determined finally and authoritatively only by the courts. **It is necessary, however, for the Administrator to reach informed conclusions as to the meaning of the law in order to enable him to carry out his statutory duties of administration and enforcement**. It would seem desirable also that he make these conclusions known to persons affected by the law. Accordingly, … **the interpretations set forth herein are intended to indicate the construction of the law which the Administration believes to be correct and which will guide him in the performance of his administrative duties under the [FLSA]**, unless and until he is directed otherwise by authoritative rulings of the courts or concludes, upon reexamination of an interpretation, that it is incorrect. **As the Supreme Court has pointed out, such interpretations provide a practical guide to employers and employees as to how the office representing the public interest in enforcement of the law will seek to apply it**….

*Id.* (emphasis added; internal footnotes omitted); *accord* 29 C.F.R. § 785.1 (articulating similar purpose behind promulgation of USDOL's "hours worked" regulations). Part 790's introductory statement further states that the interpretations expressed in Part 790 are based on the intent, purpose, and interrelationship of the FLSA and Portal Act as evidenced by their language and legislative history, as well as the on court decisions establishing principles believed to be applicable in interpreting the two Acts. *Id.* at n. 5. The USDOL's regulations were adopted by the Administrator "after due consideration of relevant knowledge and experience gained in the administration of the [FLSA] and after consultation with the Solicitor of Labor." *Id.*

The regulations appearing in 29 C.F.R. Parts 790 and 785 are both contemporaneous and longstanding and have not been disturbed by Congress during the course of amending the FLSA. *See Alvarez*, 546 U.S. at 29 (stating that the regulations appearing at 29 U.S.C. Part 790 "have remained in effect since 1947 … and no party disputes the validity of the continuous workday rule"); *Brock v. Mercy Hosp. and Med. Ctr.*, No. 84-1309, 1986 WL 12877, at *6, n.1 (S.D. Cal.

May 6, 1986) (noting that both 29 C.F.R. Parts 785 and 790 "were extant at the time of the endorsement thereof by the 1949 Amendments to the FLSA").  As such, these regulations and the USDOL's interpretations of these regulations, including the USDOL's May 31, 2006 Advisory Memorandum, guide the USDOL in the performance of the agency's administrative duties under the FLSA.  29 C.F.R § 790.1(c).  The USDOL has not been directed otherwise by the Supreme Court, nor has the USDOL concluded, based upon reexamination of its regulations or interpretations thereof, that its position concerning the continuous workday is incorrect.  *See id.*

In fact, it was **pursuant to** the USDOL's continuous workday rule, that the Supreme Court defined the compensable "workday" generally as "the period between the commencement and completion on the same workday of an employee's principal activity or activities."  *Alvarez*, 546 U.S. at 29 (citing 29 C.F.R. § 790.6(b)); *In re Cargill Meat Solutions*, 632 F. Supp. 2d 368, 377 (M.D. Pa. 2008).

Under Eighth Circuit law, the USDOL's longstanding regulations addressing the continuous workday, 29 C.F.R. § 790.6, and the recording of working time generally, 29 C.F.R. Part 785, are entitled to controlling deference.[7]  *E.g., Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*, 574 F.3d 644, 649 (8th Cir. 2009) (USDOL's regulation represented a reasonable interpretation and was entitled to deference under *Chevron*); *Godinez-*

---

[7] *See also Barnhart v. Walton*, 535 U.S. 212, 221-22 (2002) (deference under *Chevron* is appropriate absent notice-and-comment rulemaking in light of "the interstitial nature of the legal question, the related expertise of the Agency, the importance of the question to administration of the statute, the complexity of that administration, and the careful consideration the Agency has given the question over a long period of time"); *Ballanger v. Johanns*, 495 F.3d 866, 872 (8th Cir. 2007) ("[W]e must defer to agency's interpretation of the statute it is charged with enforcing unless the interpretation is contrary to the statute's unambiguous meaning").

*Arroyo v. Mukaskey*, 540 F.3d 848, 850 (8th Cir. 2008) (gaps in Congressional legislation filled by federal agency should be provided *Chevron* deference).[8]

Furthermore, this Court must also give controlling deference to the USDOL's interpretation of its own regulations unless it finds the statements "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (USDOL opinions set forth in *amicus* brief entitled to controlling deference); *Ballanger*, 495 F.3d at 872 (court "must defer to the agency's interpretation of its own regulation"); *Bond v. Twin Cities Carpenters Pension Fund*, 307 F.3d 704, 706 (8th Cir. 2002) (USDOL opinion letter entitled to *Chevron* deference).

In 2007, the Supreme Court reaffirmed that a controlling level of deference must be afforded to the USDOL's interpretation of its own regulation where it "'reflect[s] [the USDOL's] fair and considered judgment on the matter in question.'" *Coke*, 551 U.S. at 171. This is true irrespective of whether the USDOL's interpretation as expressed in opinion letters, legal briefs to the courts, or other interpretive materials, including internal wage and hour memoranda written in response to issues involving pending litigation. *See id.*; *Auer*, 519 U.S. at 462. In so concluding, the *Coke* Court repeatedly highlighted the USDOL's power and unique expertise to fill gaps in the meaning and scope of the FLSA. *See Coke*, 551 U.S. at 165-68, 171. Similarly, the *Chevron* Court recognized that:

> Judges are not experts in the field, and are not part of either political branch of the
> Government. Courts must, in some cases, reconcile competing political interests,
> but not on the basis of the judges' personal policy preferences. In contrast, an

---

[8] Even if this Court were to determine that the USDOL's longstanding continuous workday regulation is not entitled to controlling *Chevron* deference, it is entitled, at a minimum, to substantial deference under *Skidmore*, 323 U.S. at 140 (Administrator's FLSA interpretations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance"); *Brock*, 1986 WL 12877, at *5 ("Interpretive rules, particularly where they are longstanding and/or involved contemporaneous construction of a statutory enactment by the persons charged by statute with the responsibility of setting its machinery in motion and making the parts work efficiently and smoothly … are entitled to great weight").

agency to which Congress has delegated policy-making responsibilities may, within the limits of that delegation, properly rely upon the incumbent administration's views of wise policy to inform its judgments.

*** 

… federal judges – who have no constituency – have a duty to respect legitimate policy choices made by those who do.  The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: "Our Constitution vests such responsibilities in the political branches."  *TVA v. Hill*, 437 U.S. 153, 195, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978).

*Chevron*, 467 U.S. at 865-66.

The USDOL's May 31, 2006 Advisory Memorandum in which it explained the impact of *Alvarez* and reiterated its long-held view that the compensable workday begins once a meat or poultry processing employee obtains required PPE by taking an item out of bin, locker or other designated storage area and concludes with the final act of doffing or sanitizing, is the exact same type of internal Department memorandum to which the Supreme Court deferred in *Coke*. *See Coke*, 551 U.S. at 171.  The USDOL's regulation and its formal guidance on the parameters of the continuous workday were implemented "in pursuance of an official duty, based upon more specialized experience and broader investigation and information than is likely to come to a judge in a particular case."  *Skidmore*, 323 U.S. at 139-40.  They are therefore controlling and the Court must defer to the USDOL on this issue.[9]

## III.   PLAINTIFFS MUST BE PAID FOR ALL TIME DURING THE CONTINUOUS WORKDAY.

Even if the Court were to decide that the USDOL's longstanding legal position concerning the proper parameters of the continuous workday was only entitled to substantial

---

[9] Should the Court disagree with Plaintiffs, and determine that the USDOL's longstanding interpretations of the continuous workday are not entitled to controlling deference under *Chevron*, the Court must still find that the USDOL's interpretations of its own regulation are entitled to substantial deference under *Skidmore* by reason of their common-sense soundness, and the body of experience and informed judgment that the USDOL brings to bear on questions of wage and hour practices. *See, supra,* at n.8.

deference under *Skidmore*, the relevant law compels summary adjudication on this issue in favor of Plaintiffs.

The relevant case law and USDOL regulation, as well as the USDOL's May 31, 2006 Advisory Memorandum, compel a finding that Plaintiffs' compensable workday begins when Plaintiffs perform the first principal activity of obtaining their first item of required Butterball PPE from a bin, locker or another designated storage space through the "last touch" of the last doffed item on-site before a bona fide meal break or the end of the shift.[10]  *See, e.g., De Asencio v. Tyson Foods, Inc.*, 500 F3d 361, 364 n.5 (3rd Cir. 2007) (continuous workday damages calculated beginning with the initial moment of donning); *Tum*, 331 F.3d at 8-9 (holding that donning includes the retrieval or obtaining of PPE); *Alvarez*, 339 F.3d at 902 (same); *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 522 (D. Md. 2009) (holding that the initial act of donning PPE and the final act of doffing mark the beginning and end of the continuous workday, and that any activity that occurs between these two end-points is compensable); *In re Cargill Meat Solutions*, 632 F. Supp. 2d at 377-78 ("The donning and doffing of equipment at the beginning and end of the day are 'principal activities' and under the 'continuous workday' rule any activities between the commencement and completion of the donning and doffing is compensable"); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 809-10 (M.D. Tenn. 2008) (holding that donning and doffing of frock "are principal activities that mark the beginning and end of the continuous workday, such that the plaintiffs are entitled to compensation for those activities and any and all other activities – including any walking, waiting, collecting, sanitizing, and donning

---

[10] The "first touch/last touch" rules apply to both the start and end of work shifts, and the start and end of any unpaid bona fide meal break.  *See, e.g., Chavez v. IBP, Inc.*, No. 01-5093, 2005 WL 6304840, at *7, 13-16 (E.D. Wash. May 16, 2005) (holding that donning and doffing of PPE at meal breaks was compensable); *accord* Ex. B, 03/25/10 USDOL Amicus Brief at *6, n.1 ("The bona fide meal period exception from the continuous workday … clearly is not applicable until the employee ceases performing work before the start of the meal break; similarly, it is not applicable once he resumes work after the actual meal period") (citing several USDOL Opinion Letters and Wage and Hour Poultry Processing Compliance Survey Fact Sheet).

of standard or specialized gear – that occurs between those two activities"); *Chavez v. IBP, Inc.*, No. 01-5093, 2005 WL 6304840, at *7 (E.D. Wash. May 16, 2005) (holding that meat processing employees' donning and doffing at lockers where certain PPE was stored constituted the first and last principal activities of the continuous workday); Order, *Alvarez v. IBP, Inc.*, No. CT-98-5005, at *18-19 (E.D. Wash.) (finding that the first principal activity of the day involved retrieving equipment from locker room and donning that equipment, and the final activity of the day involved returning locker room and doffing and/or cleaning equipment), *aff'd by* 339 F.3d 894, 906-07 (9th Cir. 2003) (affirming trial court's ruling that donning equipment in locker room was a "preliminary activity" that was both "integral and indispensable" to the work performed and required by IBP's rules), *aff'd by* 546 U.S. 21, 37, 40 (2005).  Plaintiffs' motion for partial summary judgment should be granted accordingly.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' respectfully request that the Court issue an order determining that Plaintiffs' compensable workday begins when Plaintiffs perform the first principal activity of obtaining their first item of required Butterball PPE from a bin, a locker or another designated storage space, through the "last touch" of the last doffed item on-site at the end of the shift, including any donning, doffing, sanitizing, walking or waiting that takes before or after any bona fide meal periods.

Dated: June 18, 2010

Respectfully Submitted,

**LARSON ● KING, LLP**

By: s/T. Joseph Snodgrass
T. Joseph Snodgrass (MN#231071)
Kelly Swanson (MN#330838)
Troy Tatting (MN#354156)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Telephone: (651) 312-6510
jsnodgrass@larsonking.com
kswanson@larsonking.com
ttatting@larsonking.com

**ZIMMERMAN REED, P.L.L.P.**
J. Gordon Rudd, Jr. (MN#222082)
Anne T. Regan (MN#333852)
651 Nicollet Mall, Suite 501
Minneapolis, MN  55402
Telephone: (612) 341-0400
jgr@zimmreed.com
atr@zimmreed.com

**VEON & ENGLAND, LLP**
Robert T. Veon, Esq. (#91264)
2710 Arkansas Blvd.
Texarkana, AR 71854
Tel: (870) 774-7390
robert.veon@veonfirm.com

***ATTORNEYS FOR PLAINTIFFS AND THE COLLECTIVE ACTION CLASS***

1284012